**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carolyn Hart, individually and on behalf of all others similarly situated, | No. CV 12-2471-PHX-JAT |
| Plaintiff, | **ORDER** |
| vs. | |
| U.S. Bank NA, | |
| Defendant. | |

Pending before the Court is Plaintiff's motion for conditional class certification and judicial notice. (Doc. 40). Additionally, in compliance with the Court's Order (Doc. 39) and Local Rule 5.6, the Defendant has submitted a motion to seal (Doc. 43) portions of various documents. The Court now rules on these motions.

**I.    BACKGROUND**

Plaintiff Carolyn Hart is a former consumer lending underwriter who worked in the Phoenix office of Defendant's, U.S. Bank, National Association, Recreational Vehicle/Marine department from approximately 2005–2012. In this position, Plaintiff was responsible for evaluating consumer credit applications forwarded by RV/Marine dealers (the "indirect" in "indirect lending") and offering loan products consistent with Defendant's credit policies. Plaintiff alleges that "Defendant routinely suffered and permitted Plaintiff" to work overtime hours. (Doc. 1 at 3, ¶ 9). Defendant, however, did not pay her overtime wages, even though, Plaintiff alleges, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

1  201, *et seq.*, required Defendant to do so.  *Id.*

2        The FLSA generally requires an employer to pay overtime wages for employees
3  working more than 40 hours in a week.  29 U.S.C. § 207.  The overtime provisions do not
4  apply however, to "exempt" employees, including "any employee employed in a bona fide
5  . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  In this case, defendant classified
6  plaintiff as exempt pursuant to the "administrative employee" exemption.  *(See* Doc. 40 at
7  5; Doc. 44 at 14).

8        Plaintiff seeks to represent a nationwide class of Defendant's indirect consumer
9  lending "vehicle underwriters," which consists of both Automobile and RV/Marine
10 underwriters.[1]  Plaintiff moves here for conditional certification of the class pursuant to 29
11 U.S.C. § 216.  Plaintiff asserts that the proposed class members were together the victims of
12 a single policy of Defendant's, namely, that although vehicle underwriters were all entitled
13 to overtime wages for overtime work, Defendant uniformly mis-classified them as "exempt"
14 so as to deny them the overtime wages they were owed.  (*See* Doc. 40 at 5).  Plaintiff claims
15 that the vehicle underwriters performed the same primary job duty; were uniformly classified
16 (or misclassified) as administrative employees who were "exempt" from the overtime
17 compensation laws; were paid in a similar manner; and commonly worked overtime hours
18 without receiving overtime wages.  (*See* Doc. 40 at 3–5, 10–14).

19       Plaintiff previously filed a motion for conditional class certification and judicial notice
20 (Doc. 30), which this Court denied without prejudice (Doc. 39).  With permission from the
21 Court (*id.*), Plaintiff has re-filed her motion for conditional class certification and judicial
22 notice (Doc. 40) and submitted proposed notice materials (Doc. 41-1, Exs. 16, 20, 22).  In
23 Response, Defendant has objected to conditional certification of the class and, if the class is
24 certified, to the form and manner of judicial notice.  (Doc. 44).  Plaintiff has submitted a

25

26       [1] In its Response, Defendant argues at length that there is a material distinction
27 between "Automobile Underwriters" and "RV/Marine Underwriters." (Doc. 44 at 12–13).
   Nonetheless, "for ease of reference," Defendant has agreed to use the term "vehicle
28 underwriters" as an umbrella that refers to both groups.  (Doc. 44 at 7, n. 1).

1  Reply (Doc. 45) and modified its proposed notice materials in acceptance of several of
2  Defendant's particular objections (Doc. 45-1, Ex. 1). Additionally, Defendant has moved
3  to seal via redaction (Doc. 43) portions of nine documents (Doc. 41-1, Exs. 1–2, 4–8, 12, 15)
4  that Plaintiff submitted as exhibits in support of Plaintiff's motion for conditional class
5  certification. The Court now rules on these motions.

## II. FLSA CONDITIONAL CLASS CERTIFICATION

### A. Legal Standard

Pursuant to 29 U.S.C. § 216(b), an action "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b).

> The decision to certify a collective action under the FLSA is within the discretion of the Court. *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 989 (C.D. Cal. 2006). To certify a collective action under the FLSA, the Court must determine whether named Plaintiffs and potential opt-in members are "similarly situated." 29 U.S.C. § 216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit Court of Appeals has not construed it. *Wood v. Trivita, Inc.*, No. CV-08-0765-PHX-SRB, 2009 WL 2046048, at *2 (D. Ariz. Jan. 22, 2009).
>
> Courts have taken at least three different approaches to analyzing the issue: "(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions." *Id.* The majority of courts, including this Court, have adopted the two-tiered approach. *See, e.g.*, *Bogor v. Am. Pony Exp., Inc.*, No. CV-09-2260-PHX-JAT, 2010 WL 1962465, at *2 (D. Ariz. May 17, 2010). Accordingly, this Court will continue to follow the majority two-tiered approach.
>
> Under the two-tiered approach, during the early stages of litigation, the Court evaluates the case under a lenient standard and may grant conditional certification. *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). If the Court " 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.' The action proceeds as a representative action throughout discovery." *Id.* at 1218 (citation omitted). The Court then reevaluates, usually prompted by a motion for decertification, the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims. *Id.* at 1217–18. This determination, under a stricter standard, is based on much more information, which makes a factual determination possible. *Id.* at 1218; *Wood*, 2009 WL 2046048 at *3.

*Juvera v. Salcido*, --- F.R.D. ---, --- (D. Ariz. 2013), No. CV-11-02119-PHX-JAT, 2013 WL 1367354, at *1–2 (D. Ariz. April 4, 2013).

- 3 -

1  In this case, Plaintiff seeks conditional class certification because she is still in the early stages of the litigation—only a few depositions have taken place and discovery does not close until March 14, 2014. (Doc. 21). At this first stage, conditional certification "is by no means automatic," however, "Plaintiffs' burden is light." *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 925 (D. Ariz. 2010) (citing *Adams v. School Board of Hanover County*, No. 3:05CV310, 2008 WL 5070454 (E.D. Va. Nov. 26, 2008)). "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993); *In re Wells Fargo Home Mortgage Overtime Pay Litig.*, 527 F.Supp.2d 1053, 1071 (N.D. Cal. 2007). At this "notice stage,"

> the Court "must determine whether Plaintiffs were 'similarly situated' as required to create an opt-in class under § 216(b)" based on the pleadings and any Declarations that have been submitted. *Hipp*, 252 F.3d at 1217–18 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995)). The Court uses a fairly lenient standard because the Court does not have much evidence at this stage. *Id.* at 1218. "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Id.* at 1217 (quotation omitted). "Courts have held that conditional certification requires only that 'plaintiffs make substantial allegations that the putative class members were subject to a single illegal policy, plan or decision.' " *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (internal citation omitted).

*Salcido*, --- F.R.D. at ---, 2013 WL 1367354 at *2.

Moreover, because of the limited amount of evidence available at this stage, when determining "whether to conditionally certify a proposed class for notifications purposes only," the Court does "not review the underlying merits of the action." *Colson*, 1687 F.Supp.2d at 926 (citing *Williams v. Trendwest Resorts, Inc.*, No. CVS05-0605-RCJ-LRL, 2006 WL 3690686, at *3–4 (D. Nev. Dec. 7, 2006); *see also, e.g.*, *Stanfield v. First NLC Fin. Servs., LLC*, No. C-06-3892 SBA, 2006 WL 3190527, at *4 (N.D. Cal. Nov. 1, 2006) ("the Court will not evaluate the merits of Plaintiffs' claims under the FLSA at this point in the litigation").

- 4 -

**B.     Analysis**

In this case, the named Plaintiff asks the Court to conditionally certify this action as a representative collective action pursuant to 29 U.S.C. § 216(b) on behalf of "all vehicle underwriters who are, or were, employed by U.S. Bank National Association at any time from three years prior to the date of issuance of the notice and continuing to the present." (Doc. 40 at 2).  Along with the factual allegations contained in the Complaint (Doc. 1), Plaintiff submits two declarations from Matthew C. Helland, an attorney for Plaintiff (Docs. 41, 45-1), deposition testimony from Carolyn Hart, the sole named Plaintiff (Doc. 41-1, Ex. 23), and deposition testimony from Christopher Renn and Mark Flowers, both representatives of Defendant (Doc. 41-1, Exs. 1–2).  Plaintiff also submits several exhibits from the Depositions of Christopher Renn and Mark Flowers, which purport to be various organizational charts from Defendant, credit guidelines, and job descriptions related to the proposed class of "vehicle underwriters." (Doc. 41-1, Exs. 3–14).

Plaintiff essentially offers only one substantive argument regarding whether she is similarly situated to proposed class members. (Doc. 40 at 11–12 ).  When pared down to its most essential elements, Plaintiff's argument is that because Defendant classified all of its vehicle underwriter employees as exempt, and because Defendant's vehicle underwriters all have the same primary job duty nationwide, these elements, together, justify the Court in conditionally certifying a nationwide class for notification purposes under the FLSA. *Id*.

First, Plaintiff argues that Defendant has "uniformly classified all of its vehicle underwriters as exempt" under the administrative exception to the FLSA's overtime requirements. (Doc. 40 at 4, 12; *see* Doc. 1 at ¶ 9). Plaintiff also offers deposition testimony from two corporate representatives (Christopher Renn and Mark Flowers) of Defendant which indicates that Defendant has uniformly classified its vehicle underwriters as exempt from the overtime requirements of the FLSA. (Doc. 41-1, Ex. 1 at 90–91; Ex. 2 at 65).

Although Defendant irrelevantly[2] argues, at length, the merits about whether or not the vehicle underwriters are misclassified as exempt employees, (Doc. 44 at 8–14), Defendant agrees with Plaintiff that "the exemption at issue is the administration exemption" (Doc. 44 at 8). Consequently, Plaintiff has clearly made a substantial allegation of, and provided a reasonable basis to conclude, that the proposed class of vehicle underwriters is similarly situated with regard to FLSA exempt classification. However, "mere classification of a group of employees as exempt," while necessary, is certainly not sufficient to "automatically dictate, as a matter of law, whether collective action notification is appropriate." *Colson*, 1687 F.Supp.2d at 927. Therefore, the Court must also examine Plaintiff's second argument.

Second, Plaintiff argues that the proposed class is similarly situated within the meaning of 29 U.S.C. § 216(b) because Defendant's vehicle underwriters all have the same primary job duty nationwide. (Doc. 40 at 10–12). In support, Plaintiff offers her initial allegations (Doc. 1), her own deposition (Doc. 41-1, Ex. 23), and several internal documents from Defendant, including the relevant job descriptions and credit policies vehicle underwriters are expected to follow during the performance of their jobs. (Doc. 41-1, Exs. 5–15). Additionally, Plaintiff offers deposition testimony from two corporate representatives (Christopher Renn and Mark Flowers) of Defendant which purport to indicate that all vehicle underwriters had the same primary job duty and were subject to the same credit policies. (Doc. 41-1, Exs. 1–2).

Defendant attacks the form of Plaintiff's evidence and argues that because Plaintiff has not submitted either a declaration or deposition from another member of the proposed class, Plaintiff "cannot possibly have met her burden to show she is similarly situated to those other employees." (Doc. 44 at 5, 13). To support its conclusion, Defendant cites to

---

[2] As explained above, at this stage, the Court does not "review the underlying merits of the action." *Colson v. Avnet, Inc.*, 687 F.Supp.2d 914, 926 (D. Ariz. 2010). Instead, the Court determines whether Plaintiff has made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal. 2007) (internal quotations and citation omitted).

- 6 -

1  seven decisions[3] where this Court and others have found a plaintiff's evidence insufficient
2  to justify conditionally certifying the proposed class. (Doc. 44 at 5 (collection of citations)).
3  While Defendant correctly asserts that insufficient evidence of similarity between the
4  proposed-class members prevents a court from conditionally certifying the class, Defendant
5  incorrectly assumes that Plaintiff *must* submit declarations or affidavits from other proposed-
6  class members to meet her evidentiary burden.  Specifically, the Court finds that in
7  determining whether a proposed class should be conditionally certified for collective action,
8  a defendant's internal documents and deposition testimony from a defendant's corporate
9  representatives carry at least as much evidentiary weight as declarations or affidavits from
10 interested, opt-in plaintiffs.  A plaintiff's burden is to submit sufficient evidence to
11 demonstrate a "reasonable basis" that the plaintiff is "similarly situated" to the proposed class
12 members, *Colson*, 687 F.Supp.2d at 928, regardless of the form the evidence takes.

13      Here, Plaintiff's evidence demonstrates a reasonable basis that she and the proposed-
14 class members are similarly situated. Plaintiff presents 30(b)(6) deposition testimony from
15 Defendant's corporate representatives indicating that all vehicle underwriters (whether
16 RV/Marine or Auto), including Plaintiff, are subject to the same internal job description and
17 same primary job duty: "[c]onduct[ing] credit analysis and make underwriting decisions
18 whether to approve or deny consumer loans." (Dep. of Mark Flowers, Doc. 41-1, Ex. 2 at
19 150; Dep. of Christopher Renn, Doc. 41-1, Ex. 1 at 106; *see* Defendant Job Descriptions,
20 Doc. 41-1, Exs. 9–10, 14–15).  Additionally, the deposition testimony indicates that, for
21 consistency's sake, all vehicle underwriters, regardless of geographic area, are and were

---

[3] *Colson v. Avanet, Inc.*, 687 F.Supp.2d 914 (D. Ariz. 2010); *Bishop v. Petro-Chem Transport, LLC*, 582 F.Supp.2d 1290 (E.D. Cal. 2008); *Felix v. Davis Moreno Constr., Inc.*, No. CV F 07-0533 LJO GSA, 2008 WL 4104261 (E.D. Cal. Sept. 3, 2008); *Trinh v. JP Morgan Chase & Co.*, No. 07-CV-1666 W(WMC), 2008 WL 1860161 (S.D. Cal. Apr. 22, 2008); *Guess v. U.S. Bancorp*, No. 06-07535-JF, 2008 WL 544475 (N.D. Cal. Feb. 26, 2008); *Burk v. Contemporary Home Servs., Inc., et al.*, No. C06-1459 RSM, 2007 WL 2220279 (W.D. Wash. Aug. 1, 2007); and *Pfohl v. Farmers Ins. Group*, No. CV03-3080 DT (RCX), 2004 WL 554834 (C.D. Cal. Mar. 1, 2004).

expected to follow the same internal credit guidelines[4] when making underwriting decisions. (Dep. of Christopher Renn, Doc. 41-1, Ex. 1 at 83; Dep. of Mark Flowers, Doc. 41-1, Ex. 2 at 64–65, 112, 115–16; Credit Policies, Doc. 41-1, Exs. 5–8, 12, 15). Lastly, the deposition testimony indicates that the vehicle underwriters would, on occasion, work over 40 hours per week. (Dep. of Mark Flowers, Doc. 41-1, Ex. 2 at 66).

While this evidence is minimal, it is sufficient for Plaintiff to carry her burden at the first, lenient stage of the "similarly situated" analysis. The Court, therefore, grants conditional certification of a collective action under the FLSA. After full discovery reveals the actual facts of the case and by the deadline set below, Defendant may move to "decertify" the class. If Defendant chooses to file a "decertification" motion, the Court will reconsider the "similarly situated" issue under the higher standard discussed above.

## III.    JUDICIAL NOTICE

### A.    Court Authorized Judicial Notice

Plaintiff requests that the Court authorize the mailing and posting of Plaintiff's proposed notice to potential opt-in plaintiffs of this FLSA collective action.[5] Potential opt-in plaintiffs are entitled to receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Nonetheless, Defendant objects and claims that Plaintiff "has already sent a letter informing potential class members of the pending lawsuit." (Doc. 44 at 14; *see* Doc. 44-1, Ex. B).

---

[4] The Court notes that the credit guidelines for Auto, RV, and Marine loans differ from each other. (Doc. 41-1, Exs. 7, 12, 15). For the purposes of this motion, however, the differences between the policies appear to reflect differences between the underlying collateral rather than a material difference in the primary job duty of an RV/Marine or Auto underwriter.

[5] Plaintiff has *not* requested an accompanying Order compelling Defendant to produce the names and last known addresses of proposed class members in order to facilitate the notification process. Defendant has already provided such a list to Plaintiff. (Doc. 44-1 at ¶ 3; Doc. 45-1 at ¶ 2).

- 8 -

Even a cursory review of the letter in question (Doc. 41-1, Ex. B), however, reveals that Defendant overstates the letter's contents and import. The letter conspicuously proclaims itself to be "ADVERTISING MATERIAL" in large, capitalized, and bold letters located both above and below the body of text. (*Id.*). Although the letter identifies that a suit has been filed against Defendant, it requests only that recipients contact Plaintiff's attorneys "to assist in this case by providing information about your job duties and responsibilities." (*Id.*). There is no mention that the recipient may opt-in and join the case as an additional plaintiff. (*Id.*). Therefore, Plaintiff is correct in describing the letter as merely a "witness communication letter" that did "not advise the recipient of his or her right to join the lawsuit." (Doc. 45 at 10).

The Court finds it appropriate to give notice of the collective action to potential plaintiffs going back three years from the date of the notice. The Court believes it better to be overly inclusive at the notice stage. But the Court's decision to give notice for the three-year time period does not indicate a finding on willfulness.[6] If appropriate, Defendant may move to dismiss or for summary judgment on an opt-in plaintiff's claim on statute of limitations grounds (any such motion must be filed within the dispositive motion deadline).

### B.     The Manner of Judicial Notice

Plaintiff requests the Court to authorize Plaintiff's counsel to send notice via email in addition to U.S. postal mail, to send a reminder postcard, and for a 90-day opt-in period. (*See* Doc. 40 at 16–17; Doc. 41-1, Exs. 16, 22; Doc. 45 at 10–12; Doc. 45-1 at 1, Ex. 3). Defendant objects to each of these requests. (Doc. 44 at 21–22). Further, Defendant asks the Court to appoint a third-party administrator and requests several modifications to the language of the proposed notice and opt-in consent form. (*Id.*).

First, the Court sees no reason to require a third-party administrator, at Plaintiff's expense, to distribute the notice and receive the consent forms when Plaintiff's counsel has

---

[6] Willful violations of the FLSA are subject to a three-year statute of limitations. 29 U.S.C. § 255(a).

- 9 -

1  sworn that it can provide the service more efficiently and cost-effectively than a third-party
2  administrator. (Doc. 45-1 at ¶ 3). Furthermore, Defendant's concerns regarding the
3  necessity of the appearance of judicial neutrality (Doc. 44 at 21–22) are irrelevant here
4  because the clerk of the court will not be distributing notice or receiving opt-in forms.
5  Therefore, Plaintiff's counsel is authorized to distribute notice and receive opt-in forms.

6  Second, the Court sees no reason why sending notice exclusively via U.S. mail (and
7  not also by email) would not be appropriate in this case. A "certified class must receive 'the
8  best notice practicable under the circumstances, including individual notice to all members
9  who can be identified through reasonable effort.' " *Stickle v. SCI Western Market Support*
10 *Center, L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009)
11 (quoting *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623, 630 (D.Colo. 2002) (quoting
12 Fed.R.Civ.P. 23(c)(2))). Here, the best practicable notice is first class mail. The Court sees
13 no reason why such notice is inadequate.[7] Furthermore, the Court agrees with Defendant that
14 it would be disruptive to send notice to potential opt-in plaintiffs via their Defendant-
15 provided work email address and that utilizing personal email addresses would unduly invade
16 the privacy of the potential plaintiffs. As a result, the Court does not authorize Plaintiff to
17 send notice via email, as Plaintiff requests.

18 Third, the Court finds no merit in Defendant's unsupported claim that sending a single
19 "reminder notice," in addition to the already authorized notice letter, constitutes
20 "harass[ment]" of the potential opt-in plaintiffs. (Doc. 44 at 21). Consequently, Plaintiff's
21 counsel may mail a single reminder notice at some point, within its own discretion, between

---

[7] Plaintiff's only argument that notice via U.S. mail may be inadequate is an implication that the U.S. Postal Service may be unreliable because it has cut hours at some post offices, may close others, and may eliminate Saturday delivery. (Doc. 40 at 16). Nonetheless, the U.S. Postal Service guarantees that "[n]either snow, nor rain, nor heat, nor gloom of night, nor the winds of change, nor a nation challenged will stay us from the swift completion of our appointed rounds. Ever." United States Postal Service, Comprehensive Statement on Postal Operations, 1–2 (2001), http://about.usps.com/strategic-planning/cs01/cs2001.pdf; *see* 39 U.S.C. § 101.

- 10 -

1   mailing the initial notice and the close of the opt-in period.

2       Fourth, the Court finds Defendant's objection to a 90-day opt-in period unpersuasive.
3   Because the letter previously mailed by Plaintiff was not a judicial notice (Doc. 44-1, Ex. B),
4   Plaintiff's mailing of the letter does not justify, as Defendant suggests, reducing the opt-in
5   period to only 30 days.  Furthermore, Defendant offers no independent reason the period
6   should be reduced from 90 to 60 days, "considering that some courts in this Circuit have
7   approved 60 days, and others have approved 90 days." *Williams v. U.S. Bank Nat. Ass'n*,
8   290 F.R.D. 600, 614 (E.D. Cal. 2013).  Thus, potential opt-in plaintiffs shall have 90 days
9   from the posting of the initial mailing to opt in to the collective action.

10      **C.**    **The Form of Judicial Notice**

11      In its motion, Plaintiff provides a proposed form of notice, an opt-in consent form, an
12  envelope, and a reminder notice to send to potential plaintiffs. (*See* Doc. 41-1, Exs. 16, 20,
13  22). Defendant proposes numerous modifications to Plaintiff's proposed form of notice and
14  opt-in consent form, the most significant of which is the addition of language regarding
15  potential liability for costs if the lawsuit proves unsuccessful. (Doc. 44 at 20–23).  The Court
16  notes, however, that aside from the addition of cost language, Defendant provides no
17  justification for its other proposed changes. (*Id.*).  In its Reply, Plaintiff has accepted many
18  of Defendant's proposed modifications, but opposes others. (Doc. 45 at 12).  Plaintiff also
19  submits a version of the proposed notice and consent forms updated with the modifications
20  that Plaintiff does not oppose. (Doc. 45-1, Ex. 1).

21      The Court is unconvinced that including language regarding potential costs of
22  unsuccessful litigation would accomplish anything other than chilling an interested plaintiff
23  from seeking more information. *See, e.g.*, *Gerlach v. Wells Fargo & Co.*, No. C 05-0585
24  CW, 2006 WL 824652 (N.D. Cal. Mar. 28, 2006).  To the extent that the "potential liability
25  for costs is likely to be a factor of consideration in deciding whether to join a lawsuit," (Doc.
26  44 at 20), the Court reminds the attorneys for both parties that they are aware of their ethical
27  duties, as well as the Arizona Rules of Professional Conduct, which they must obey if they
28  are contacted by potential opt-in plaintiffs seeking further information.

1    After reviewing the proposed updated notice, updated opt-in consent form, envelope, 2 and reminder notice, and considering the Defendant's proposed changes and the parties' 3 arguments, the Court approves the updated notice and updated opt-in consent form (Doc. 45-4 1, Ex. 1). The Court also approves the proposed notice-envelope and reminder notice (Doc. 5 41-1, Exs. 20, 22), with the following modifications:

6    In order to be consistent with the language of the updated notice, both instances of 7 "Vehicle Underwriter" on the envelope, (Doc. 41-1, Ex. 20), should be replaced with 8 "Consumer Lending Underwriter."

9    The language of the reminder notice includes much of the same language as the 10 proposed notice and opt-in consent form. (Doc. 41-1, Ex. 22). Therefore, the reminder 11 notice should be modified to match the language of the updated notice and updated plaintiff 12 opt-in consent form (Doc. 45-1, Ex. 1).

### IV. DEFENDANT'S MOTION TO SEAL

Plaintiff has filed nine redacted documents as exhibits in support of Plaintiff's motion for conditional class certification and judicial notice. (Doc. 41-1, Exs. 1–2, 4–8, 12, 15). Defendant has moved to seal the redacted portions of Plaintiff's exhibits (Doc. 43) and, pursuant to the Court's previous order (Doc. 39), has provided "a more substantive explanation of why the documents were filed with redactions." (Doc. 43-1 at 2). The Court notes, however, that Defendant's "substantive explanations" consist of a single paragraph that generically claims that the redacted portions of the documents are either trade secrets, proprietary, or otherwise confidential. (*Id*. at 2–3). Defendant also generically and unspecifically alleges that eight of the nine redacted portions could be used by a consumer or competitor to Defendant's business detriment. (*Id*. at 3).

#### A. Legal Standard

"It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Though access to judicial records is not absolute, a strong presumption of access exists for records not traditionally kept secret. *Kamakana v.*

*City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Thus, a party seeking to seal a judicial record must meet a "compelling reasons" standard. That is, "the party must articulate compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id.* at 1178–79 (internal quotations and brackets omitted). Additionally, "sources of business information that might harm a litigant's competitive standing" often warrant protection under seal. *Nixon*, 435 U.S. at 598.

With regard to non-dispositive motions, "[t]he Ninth Circuit has determined that the public's interest in non-dispositive motions is relatively lower than its interest in trial or a dispositive motion." *Williams v. U.S. Bank Nat. Ass'n*, 290 F.R.D. 600, 604 (E.D. Cal. 2013).

> Accordingly, a party seeking to seal a document attached to a non-dispositive motion need only demonstrate "good cause" to justify sealing. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (applying "good cause" standard to all non-dispositive motions because such motions "are often unrelated, or only tangentially related, to the underlying cause of action") (internal quotation marks and citation omitted), *cert. denied*, 562 U.S. ---, 131 S.Ct. 900 (2011). "The party seeking protection bears the burden of showing specific prejudice or harm will result if no [protection] is granted." *Phillips v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002). That party must make a "*particularized showing* of good cause with respect to any individual document." *San Jose Mercury News, Inc. v. U.S. Dist. Court, N. Dist. (San Jose)*, 187 F.3d 1096, 1103 (9th Cir. 1999) (emphasis added). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir.) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)), *cert. denied*, 506 U.S. 868 (1992).

*Williams*, 290 F.R.D. at 604.

**B.   Analysis**

Unopposed by Plaintiff, Defendant moves to seal (via redaction) the following nine documents, attached as exhibits to the Declaration of Matthew C. Helland in Support of Plaintiff's Motion for Conditional Certification and Judicial Notice (Doc. 41):

**1.   Exhibit 1—Renn Deposition, 77:3–21.**

Exhibit 1.1 consists of excerpts of the March 14, 2013 deposition transcript of Christopher Renn, a corporate representative of Defendant. (Doc. 41-1, Ex. 1). Defendant's

- 13 -

1  "substantive" rationale rather scantily characterizes the redacted portion as "testimony
2  referenc[ing Defendant's] proprietary external and internal service level
3  agreements/expectations." (Doc. 43-1 at 2). In actuality, the testimony describes
4  Defendant's representations to the marketplace regarding the length of time necessary for a
5  vehicle underwriter to process a loan application, as well as the unsurprising internal
6  expectation that its vehicle underwriters process loans applications faster than the
7  marketplace expects. (Doc. 41-1, Ex. 1 at 77:3–21). Defendant's representations to the
8  marketplace and the actual, readily observable, actions of Defendant related to these
9  representations are public knowledge and cannot be considered confidential or proprietary.
10 Therefore, on factual grounds, the Court denies Defendant's request to seal Exhibit 1 at
11 77:3–21.

### 2. Exhibit 2—Flowers Deposition, 115:1–19.

Exhibit 2 consists of excerpts from the April 10, 2013 deposition transcript of Mark Flowers, a corporate representative of Defendant. (Doc. 41-1, Ex. 2). Defendant's "substantive" rationale rather scantily characterizes the redacted portion as "discuss[ing Defendant's] confidential and propriety credit policies." (Doc. 43-1 at 2). In actuality, the testimony quotes the contents of a single cell from a credit policy matrix, without further context as to what type of collateral or loan or lease product the matrix governs, and generally acknowledges that vehicle underwriters have the authority to make exceptions under vaguely defined circumstances. (Doc. 41-1, Ex. 2 at 115:1–19). Defendant's vague and generic allegation that revealing these few lines of testimony somehow "irreparably harm[s]" Defendant's "competitive advantage" (Doc. 43-1 at 3) is not a "particularized showing of good cause" with respect to the redacted portion of Exhibit 2. *See San Jose Mercury News*, 187 F.3d at 1103. Therefore, as a matter of law, the Court denies Defendant's request to seal Exhibit 2 at 115:1–19.

### 3. Exhibit 4—Organization Chart.

Exhibit 4 consists of organization charts identifying the potential opt-in plaintiffs' names, their work telephone numbers, their general geographic locations, and their relative

1 positions within Defendant's organization. (Doc. 41-1, Ex. 4). Defendant requests the
2 redaction of the names and work telephone numbers of each potential opt-in plaintiff. (*See*
3 *Id*.; Doc. 43-1 at 2–3). Defendant describes this information as "contact information for the
4 putative class" and provides a single sentence arguing for its redaction: "As to Exhibit 4:
5 [Defendant] contends that its employees would be irreparably harmed if their contact
6 information were made public." (Doc. 43-1 at 2–3). This meager argument is nothing more
7 than a "[b]road allegation[] of harm, unsubstantiated by specific examples or articulated
8 reasoning." *Beckman Indus., Inc.* 966 F.2d at 476. As a matter of law, Defendant's
9 argument fails to show good cause, and therefore the Court denies Defendant's request to
10 seal Exhibit 4.

### 4. Exhibits 5–8, 12—Credit Policies.

Exhibits 5, 6, 7, 8, and 12 are copies of five of Defendant's "confidential and proprietary credit policies." (Doc. 43-1). Defendant requests the sealing of (via redaction) the entirety of these five documents except for a small portion on the front page of each which describes the contents of the document. (Doc. 43-1 at 2; *see* Doc. 41-1. Exs. 5–8, 12). These policies contain detailed information regarding Defendant's underwriting decision making process. In particular, the policies include credit decision matrixes which calculate credit decisions. Defendant argues that each of these five credit policies is an internal policy and guideline unique to Defendant and not public knowledge. (Doc. 43-1 at 3). Defendant alleges that disclosure of the credit policies to the public could provide competitors with an "an unfair advantage" and "irreparably harm[]" Defendant "in terms of lost competitive advantage." (*Id*.). The Court finds it not only plausible, but likely that a competitor could, in fact, utilize these credit policies to Defendant's competitive disadvantage in ways unrelated to the underlying cause of action in this case.[8] Thus, the Court finds that Defendant has made a particularized showing of good cause with respect to the credit policies. The

---

[8] For example, a competitor could undercut Defendant by setting its loan terms or rates at a point slightly below those specified in Defendant's credit policies.

- 15 -

Court, therefore, grants Defendant's request to seal the redacted portions of Exhibits 5, 6, 7, 8, and 12.

## V. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the motion for class certification (Doc. 40) is granted. This case is conditionally certified as a collective action under the FLSA § 216(b).

**IT IS FURTHER ORDERED** that the class is defined as: all vehicle underwriters who are, or were, employed by U.S. Bank National Association at any time from three years prior to the date of issuance of the notice and continuing to the present.

**IT IS FURTHER ORDERED** that Plaintiff is authorized to mail, consistent with this Order, the updated notice, updated opt-in consent form, envelope, and reminder notice to the potential opt-in plaintiffs. Plaintiff shall file each of the documents with the Court, modified consistent with this Order, within five days. Defendant may to the content of documents object within five days of filing only if Defendant argues Plaintiff failed to comply with this Order. If Defendant does not object, Plaintiff shall send the initial mailing to the prospective opt-in Plaintiffs within 15 days of this Order.

**IT IS FURTHER ORDERED** that Defendant's motion to seal (Doc. 43) is granted in part and denied in part. While the Court's courtesy copy of the documents were unredacted, the Court has not located unredacted copies in the record. Therefore, Plaintiff shall file an unredacted copy of Exhibits 1, 2, and 4 (as an additional attachment to the motion) not under seal. Plaintiff shall also file an unredacted copy of exhibits 5, 6, 7, 8, and 12 (as an additional attachment to the motion) under seal.

**IT IS FINALLY ORDERED** that any motion to decertify the class is due by March 14, 2014.

DATED this 8th day of November, 2013.

*/s/ James A. Teilborg*
James A. Teilborg
Senior United States District Judge